UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICIA GRIMWOOD,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,

    Defendant.

Case No. 16-12592
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16] AND DENYING PLAINTIFF'S MOTION FOR A DECLARATION THAT ILLINOIS LAW CONTROLS [20]**

As Alicia Grimwood was boarding a flight from Chicago to Kalamazoo, she fell in the jetbridge, the enclosed walkway that connects the terminal gate to the airplane. Grimwood says this particular jetbridge's floor had a protruding strip of metal small enough to escape her detection but big enough to snag her flip-flop and send her falling to the ground. She broke her fibula.

Grimwood sued American Airlines asserting that the airline had been negligent. American has filed for summary judgment, believing either that the record does not support Grimwood's claim or that Michigan's open and obvious doctrine defeats Grimwood's claim as a matter of law. For her part, Grimwood says a jury should decide what happened in that jetbridge. And despite filing suit in Michigan, Grimwood wants Illinois law to apply.

For the following reasons, the Court will grant American's motion for summary judgment.

**I.**

As a frequent business traveler (R.18, PageID.333), Alicia Grimwood was at O'Hare International Airport in Chicago, Illinois trying to catch an American Airlines flight home to

Kalamazoo, Michigan (R. 16, PageID.107). Grimwood fell while walking down the jetbridge. (R. 16, PageID.140.)

**A.**

Prior to her fall, Grimwood says this jetbridge experience was as unremarkable as every other. (R. 16, PageID.166; R. 18, PageID.335.) Nothing seemed out of place and nobody else fell on their way to the plane. (R. 16, PageID.157, 161, 166.) The gate agent scanned her e-ticket, she pocketed her phone, started toward the airplane, tried to remember which aisle she was in, dragged her roller bag along, and made sure not to bump into anyone. (*Id.* at PageID.158–162, 166.)

But within sight of the aircraft, she suddenly sensed she was falling. (R. 16, PageID.167.) Next thing she knew she was on her bottom and turned around, with her feet sticking out in front of her, pointed towards the terminal. (*Id.* at PageID.168.) And for the first time, Grimwood says, she saw a thin piece of metal sticking up from a metal plate on the floor. (*Id.* at PageID.169.) The metal plates are called jetbridge guards. (*Id.* at PageID.269.) Grimwood fell in a part of the jetbridge with uneven flooring, (R. 16, PageID.199, 232) and to ease the unevenness, the jetbridge guards affix to the jetbridge's walls and smooth out the floor as much as possible (*Id.* at PageID.269). Grimwood says she saw her right flip-flop wedged into a gap created by the space between the little metal strip of the jetbridge guard and the floor (*Id.* at PageID.169.) Grimwood says the strip was "really, literally, raised up enough that you wouldn't have noticed it." (*Id.* at PageID.169; *Id.* at PageID.173–174.)

Grimwood was traveling with a friend, Kathy Coats. Like Grimwood, Coats, too, remembers an uneventful jetbridge experience prior to the fall. (*Id.* at PageID.212–214.) And after Grimwood fell, Coats remembers picking up the flip-flop, which was on the jetbridge floor, but she does not remember one way or another whether the sandal was wedged into anything. (*See* R.

16, PageID. 222–224.) And Coats remembers a metal strip "raised up and not flush with the floor" of the jetbridge. (*Id.* at PageID.225.) Because the metal strip was "away from the floor" it caused a "gap" that Coats could only guess was somewhere between half an inch to an inch wide. (*Id.* at PageID.226; *see also* R. 16-21.)

Eventually, an ambulance took Grimwood to a Chicago-area hospital. In the ambulance, Grimwood told emergency personnel that she stumbled over an uneven metal divider or surface on the jetbridge. (R. 16, PageID.201, 204, 206.) Coats rode with Grimwood and remembers her saying much the same. (*Id.* at PageID.229–230.) Once at the hospital, doctors examined Grimwood and discovered a broken fibula, an ankle sprain, and some nerve damage. (R. 18, PageID.353.)

**B.**

Evelyn Bonet was American's gate agent on duty that day. Bonet says she worked Gate G4—the gate Grimwood used—hundreds, if not thousands, of times. (*Id*. at PageID.253.) That day, like every other day, she operated the jetbridge and remembers maneuvering it without a problem. (R. 16, PageID.252.) And she never remembers a time when the jetbridge guards at G4—or any gate for that matter—moved out of position. (*Id.* at PageID.256.) In her memory, the jetbridge guards always lay flush with the floor. (*Id.*)

Monica Jazmine was the airline's manager on duty that day. (R. 16, PageID.290.) Her responsibilities included G4. (*Id.* at PageID.290.) She says the airline trained her to call maintenance if she ever saw anything out of place on a jetbridge. (*Id.* at PageID.292.) As she has never seen anything out of place on a jetbridge, she has never called anything in. (*Id.* at PageID.293.)

William Baker was the flight attendant working Grimwood's flight. Baker says his regular routine when a plane reaches a gate is to conduct a safety inspection. (*Id.* at PageID.238.) Chiefly,

3

Baker's inspection meant walking the length of the jetbridge to "inspect it for any unsafe conditions before boarding." (*Id.*) And in all his years as a flight attendant, he has never come across a jetbridge guard uneven with the flooring. (*Id.* at PageID.239.) Were he to ever see an out-of-place guard, Baker would notify the gate agent and say the jetbridge is not safe for boarding. (*Id.*) But Baker says the jetway guards were not out of place on the day Grimwood fell. (*Id*. at PageID.243.) So he had no reason to tell Bonet not to board the plane. (*Id.* at PageID.239.)

Hal Jerklin works for the airline. At O'Hare, Jerklin oversees all maintenance and operations at Gate G4, among others. (R. 16, PageID.267.) For his part, he cannot recall any maintenance requests on the G4 jetbridge at any time, including before Grimwood's fall. (*Id.*) And he never saw anything out of place. (*Id.*) Jerklin says jetbridge guards are "always stationary and permanently affixed to the side walls of the jetway." (*Id.* at PageID.269.) Because they do not move at all, Jerklin believes any gap between the jetbridge guard and the floor—like the one Coats and Grimwood describe—is physically impossible. (*Id.*; *see also* R. 16-21.)

## C.

Grimwood sued American, bringing a single negligence claim on a premises liability theory. And, following discovery, American moved for summary judgment.

## II.

Summary judgment is appropriate where the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To the extent American Airlines moves for summary judgment on a claim for which it does not bear the burden at trial, it can carry its initial summary-judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support [Grimwood's] case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). At that point the summary-judgment

burden shifts to Grimwood, who "must come forward with specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To the extent American moves for summary judgment on a defense for which it bears the burden at trial, the same burden-shifting applies, but initially, the airline has a heavier lift. *See Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012). To discharge its summary-judgment burden, American must show "the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* (internal quotation marks omitted); Charles Alan Wright, et al., 10A Fed. Prac. & Proc. § 2727.1 (4th ed.). And at all times, the Court views the record evidence in the light most favorable to Grimwood, *see Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir. 2017), though not if her version is "so utterly discredited by the record as to be rendered a visible fiction." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) (internal quotations omitted).

### III.

American's motion raises four arguments in support of summary judgment. Two contend there is an absence of evidence to support elements of Grimwood's negligence claim. (R. 16, PageID.91, 98.) One argues that Grimwood's testimony about a gap must give way to a "physical facts rule." (*Id.* at PageID.96.) And the fourth relies on Michigan's open and obvious doctrine to defeat Grimwood's claim as a matter of law. (*Id.* at PageID.101.)

In response, Grimwood urges the Court to declare that Illinois law applies. And relying on Illinois law, she contends a fact issue precludes summary judgment for American. Grimwood thinks a jury should decide whether her flip-flop got wedged into a small opening between the floor and the jetbridge guard.

As the choice-of-law issue is a threshold concern, the Court starts there.

5

## A.

Grimwood filed suit in Michigan, and yet implores the Court to apply Illinois law. (R. 20.) According to Grimwood, because the incident happened on a jetbridge owned by the City of Chicago, Illinois has an interest in seeing its jetbridges properly maintained.[1]

Sitting in diversity, this Court applies Michigan's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). And under these rules, the Court "will apply Michigan law unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv.*, 562 N.W.2d 466, 471 (Mich. 1997). The "rational reason" framework requires a two-part analysis: first determine whether another state has an interest in having its law applied and then, if so, whether Michigan's interests nonetheless "mandate" the application of Michigan law. *Id.*; *see also Olmstead v. Anderson*, 400 N.W.2d 292, 302 (Mich. 1987).

At step one, Illinois has some interest in the case. Despite Grimwood's allegations, Chicago neither owns nor operates the jetbridge; American does. (R. 22, PageID.407, 414.) But Illinois has at least some say in regulating private property, like jetbridges, to ensure public safety. *See, e.g.*, *La Salle Nat'l Bank v. County of Cook*, 340 N.E.2d 79, 89 (Ill. Ct. App. 1975).

At step two, the Court finds that Michigan's interests nonetheless "mandate" that Michigan law be applied. *Sutherland*, 562 N.W.2d at 471. Grimwood is a Michigan resident, and Michigan's "choice of law provisions favor allowing Michigan residents to bring suit in Michigan courts under Michigan law." *Gass v. Marriott Hotel Servs.*, 558 F.3d 419, 425 (6th Cir. 2009) (citing *Olmstead*, 400 N.W.2d at 302)). That is because Michigan has an "interest in protecting its residents from

---

[1] As American rightly points out, Grimwood's separate motion to apply Illinois law suffers from a variety of procedural problems. (R. 22, PageID.399.) But more to the point, if Grimwood wanted Illinois law to control this case, she could have filed suit in Illinois. Indeed, at the initial scheduling conference, the Court questioned why this case was filed in the Eastern District of Michigan but both parties opted to keep it here.

injury and providing just compensation to its citizens." *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005). And even though Grimwood fell in Illinois, she received the bulk of her medical care—including multiple surgeries and months of physical therapy—in Michigan (R. 18, PageID.352–353.) Plus, a Michigan insurer covered most of the cost of that care. (*Id.* at PageID.353.) So Grimwood's injury gave rise to "significant" Michigan contacts, "creating [Michigan] interests" justifying the application of Michigan law. *Allstate Ins. Co. v. Hague*, 449 U.S. 302. 312–13 (1981).

In sum, although Illinois has some interest in this case, so does Michigan. And Michigan's interests are such that they mandate the application of Michigan law. The Court thus declines Grimwood's invitation to apply Illinois law.

**B.**

Under Michigan law American has a duty "to exercise reasonable care to protect invitees" like Grimwood "from an unreasonable risk of harm caused by a dangerous condition" on the airline's property. *Bertrand v. Alan Ford, Inc.*, 821 N.W.2d 88, 94 (Mich. 2012) (internal quotations omitted); *see also* Restatement (Second) Torts § 343. And American "breaches its duty of care when it 'knows or should know of a dangerous condition on the premises of which the invitee is unaware . . . .'" *Lowery v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 350 (Mich. 2016) (quoting *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012). So notice is an essential element of a premises liability claim. *Lowery*, 890 N.W.2d at 351.

American says nothing in the record shows that it knew or should have known about any half-inch-to-an-inch gap in the jetbridge's floor. (R. 16, PageID.98.) And American says Grimwood bears the burden on notice. So absent record evidence to show actual or constructive notice, American says it deserves summary judgment. (R. 16, PageID.98.)

The Court agrees. *See Lowery*, 890 N.W.2d at 350–51 (holding that notice is an essential element of a premises liability claim and plaintiff bears the burden of proof on it). Start with actual notice. William Baker, the flight attendant working Grimwood's flight, walked the jetbridge prior to boarding and says the jetbridge guards were not out of place. (R. 16, PageID.242–243.) And the gate agent on duty at G4 that day did not recall anything out of the ordinary with the jetbridge. (R. 16, PageID.256.) She remembers the jetbridge guards laying flush with the floor. (*Id.*) The airline's maintenance manager never saw anything out of place nor received any maintenance requests for G4. (*Id.* at PageID.267–269.) And neither did the airline's manager on duty. (*Id.* at PageID.293.) Nor does Grimwood identify any evidence of actual notice. So nothing in the record shows American had actual notice of any gap.

With respect to constructive notice, Grimwood contends there is a fact issue. She points to her testimony and Coats' testimony regarding the existence of a gap sufficient to catch her flip-flop and says it "create[s] a jury issue regarding whether reasonable inspection by American Airlines of the metal plates in the jetway 'should' have discovered the condition." (R. 16, PageID.322.) In making this argument, she relies on—what she believes—is more lenient Illinois law. (R. 18, PageID.322.)

But as explained above, Michigan law applies. And unlike Illinois, the Michigan Supreme Court "has never required a defendant to present evidence of a routine or reasonable inspection . . . to prove a premises owner's lack of constructive notice of a dangerous condition on its property." *Lowrey*, 890 N.W.2d at 349. Rather, constructive notice will be found where the unsafe condition "is of such a character or has existed a sufficient length of time that [the proprietor] should have had knowledge of it." *Clark v. Kmart Corp.*, 634 N.W.2d 347, 349 (Mich. 2001); *see also Lowrey*,

890 N.W.2d at 350 (holding constructive notice turns on whether a property owner "should have known of [an unsafe condition] because of its character or the duration of its presence").

And just like actual notice, Grimwood offers no evidence of constructive notice. She does not present any evidence that the gap was "of such a character" that American should have known about it. Both Grimwood and Coats agree the gap was unobtrusive. Coats observed a gap but speculated it was no more than one-inch wide. (R. 16, PageID.225–227). And Grimwood admits the gap was something you "could not visibly see." (R. 16, PageID.169.) She also says she never saw anything obvious, like a metal strip sticking up or poking up. (R. 16, PageID.176.) Plus, dozens ahead of Grimwood, including Coats, walked through the jetbridge without incident (R. 16, PageID.157). *See Lowery*, 890 N.W.2d at 350.

Grimwood also offers nothing to show when the gap arose or how long it existed. Both the flight attendant and the gate agent walked the jetbridge prior to boarding Grimwood's flight and neither saw a gap. (R. 16, PageID.243, 256.) Grimwood says she has no idea when the gap arose. (*Id.* at PageID.176.) Thus, Grimwood cannot show the gap lasted long enough that American should have known about it. *See Pritchard v. Northwest Airlines, Inc.*, 111 F. App'x 406, 410 (6th Cir. 2004) ("In the absence of any evidence tending to show how long the condition had existed, a jury could not conclude that [the defendant] should have known of it."); *Misko v. Speedway*, LLC, No. 16-13360, 2018 U.S. Dist. LEXIS 88888, at 419–20 (E.D. Mich. May 29, 2018) ("For a constructive notice claim to survive summary judgment there must be sufficient evidence [to] permit a jury to find that the dangerous condition was present long enough that the defendant should have known of it." (internal quotations omitted)); *Lowery*, 890 N.W.2d at 351 (finding no fact issue on constructive notice where plaintiff did not offer evidence to show when the hazard arose or how long it was present); *Whitmore v. Sears, Roebuck & Co.*, 279 N.W.2d 318, 321

(reasoning that a plaintiff needs to offer some evidence of a condition's duration in order to establish constructive notice); *cf. Clark v. Kmart Corp.*, 634 N.W.2d 347, 349 (Mich. 2001) (sending the issue of constructive notice to a jury because the record contained some evidence about when the condition arose).

Taken together, Grimwood offers no evidence to show the gap in the floor was of such a character or lasted long enough that American should have known about it. And the undisputed record also lacks any evidence of actual notice. So no reasonable jury could find American had notice of the gap. American has discharged its summary-judgment burden.

**IV.**

In sum, Michigan's interests in this case mandate the application of Michigan law. So the Court DENIES Grimwood's request to apply Illinois law. (R. 20.) Accordingly, American's motion to strike (R. 21), is DENIED AS MOOT. And American succeeds in showing an absence of evidence to support Grimwood's negligence claim. On the undisputed record no reasonable jury could find that American had actual or constructive notice of any gap in the jetbridge floor. Thus, the Court GRANTS American's motion for summary judgment. (R. 20.)

SO ORDERED.

Dated: August 16, 2018                  s/Laurie J. Michelson
                                                                         U. S. District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 16, 2018August 16, 2018.

                                              s/Teresa McGovern
                                              Deputy Clerk